# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

**SHIRLEY SUE LAMP,**

    **Plaintiff,**

**v.**                                         **CASE NO. 2:13-cv-09752**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

    **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits (hereinafter "DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.   By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10) and Brief in Support of Defendant's Decision (ECF No. 15).

### BACKGROUND

Shirley Sue Lamp, Claimant, applied for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act, 42 U.S.C. Sections 401-433 on or about January 26, 2010,

alleging disability beginning March 26, 2005[1] (Tr. at 21, 143-145).   The claim was denied initially on February 25, 2010, and upon reconsideration on May14, 2010.   On June 22, 2010, claimant requested a hearing by   Administrative Law Judge (Tr. at 86-87).   In her request for a hearing before an Administrative Law Judge (ALJ), Claimant stated that she did not have any additional evidence to submit.   An administrative hearing was conducted on July 11, 2011, in Charleston, West Virginia (Tr. at 36-59). In the decision dated July 22, 2011, the ALJ determined that the Claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act (Tr. at 21-30).   On or about August 24, 2011, Claimant requested a review by Appeals Council (Tr. at 17).   On February 22, 2012, the Appeals Council received additional evidence from Claimant which it made part of the record (Tr. at 5).   On March 14, 2013, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision." (Tr. at 1).   The Appeals Council stated it considered the additional material but this information did not provide a basis for changing the ALJ's decision (Tr. 1-2).   On May 1, 2013, Claimant brought the present action requesting the ALJ's decision to be reversed or in the alternative, remand this matter to correct the errors made below.

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.   *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."   42 U.S.C. § 423(d)(1)(A).

---

[1]   On October 12, 2006, Claimant filed a Title II application for a period of disability and disability insurance benefits.   The Title XVI claim was technically denied due to excessive income.   The Title II claim was denied initially and on reconsideration.   There is no evidence to indicate an appeal was filed on the determinations.

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2013).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2013).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date (Tr. at 23).  Under

3

the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease of the cervical spine radiating to the upper extremities with right upper extremity tremor and low back pain with radiation to lower extremities with calcaneal spurs.   At the third inquiry, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or equals the level of severity of any listing in Appendix 1 (Tr. at 24).   The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations[2] (Tr. at 29).   As a result, Claimant can perform unskilled light work as a counter clerk, security guard and ticket taker (Tr. at 29).   On this basis, benefits were denied (Tr. at 30).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with

---

[2] The ALJ held that Claimant had the residual functional capacity to perform light work except due to chronic pain from degenerative disc disease of the cervical spine and low back with radiation into lower extremities, she may occasionally climb ladders, ropes, scaffolds, ramps and stairs; crouch, crawl, stoop, kneel and balance.   She should avoid all exposure to hazards such as machinery, heights and vibration.   She is limited to standing, walking and sitting for up to thirty minutes and would require a sit/stand option at will.   She has mild tremor on the right upper extremity, but gripping with the right hand is normal (Tr. at 24).

resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their

duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

*Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by

substantial evidence.

## Claimant's Background

Claimant was born on February 26, 1962.   She completed the eleventh grade but did not

obtain a GED (Tr. at 25).   She never attended special education classes. Claimant is married and

lives with her husband, children and grandchild. She previously worked as a manger in a retail

store where she supervised twelve employees and was responsible for hiring, firing, scheduling,

discipline and record keeping for the employees.

## The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record,

and will summarize it briefly below.

Claimant quit work in March 2005 as a manager in a retail store after working there for

four years.   She was required to lift fifty pounds or more.   She supervised twelve employees and

was responsible for hiring, firing, scheduling, discipline and record keeping for the employees.

Claimant testified that she had back problems from a previous injury.   In 2005, she

suffered chronic pain in her low back.   In his decision, the ALJ found that her pain was eased by

medication and rest and she had described it as mild to moderate and at a ten without medication

but a five after medication on a scale of one-to-ten (Tr. at 25).   She has been advised to have neck

and back surgery but has elected not to have it because there are no promises or guarantees of improvement and she cannot afford the surgery.   She attended physical therapy but it did not help. She can walk or stand for fifteen or twenty minutes before resting.   She could sit for twenty to thirty minutes before having to change positions.   She is able to lift twenty pounds with both hands.

Claimant experiences "knots" in her back and she used heating pads to relieve it.   She can raise her arms above her shoulders but she has constant pain because she no longer takes medication because they cause nausea.   The ALJ found that Claimant had a tremor of the right hand that began in late 2009 after she reached overhead to knock down an icicle. She has difficulty with her grip and uses both hands when picking up a cup. She uses cups with lids to prevent spills. She has difficulty dressing because of buttons, shoelaces and hooks.   Her husband assists her with dressing.   She also has to receive help bathing and shaving her legs.

Claimant experiences panic attacks daily but does not take medication.   She has stopped driving an automobile because she has blacked out while driving.   She is also depressed and often cries.   The ALJ found that she can concentrate at times but it is not a full concentration and she has difficulty finishing tasks.

In December 2006, Dr. Sabio revealed the motion of the cervical spine was tender and that there was no tenderness, inflammation, swelling or effusion of the shoulders, elbows, wrists and hands. Range of motion of the shoulders was restricted due to pain and stiffness, but fine manipulation movements were well preserved.   Right hand grip was measured at 24 KGF with zero on the left.   Fine manipulation movements were well preserved and Ms. Lamp could write, pick up coins and button her clothes without assistance.

6

In January 2010, she presented to the emergency department with neck pain radiating to the left upper extremity, and was prescribed Percocet.   She reported that the medication helped relieve the pain.

In February 2010, Claimant reported numbness and weakness of the upper extremities with some relief from wrist braces.   An examination indicated slight muscle weakness of 4/5 in the upper extremities.   Lortab was continued.   The ALJ noted that the medical evidence in the record does not reference a left hand tremor.

Claimant's activities of daily living include going grocery shopping and small trips, preparing simple meals and lying down throughout the day for short periods.   She spends her days watching television and listening to the radio.   Claimant cares for her pet dog.   She goes outside two to three times a day to walk the dog.   She washes dishes and does laundry.   She shops in stores, and by phone, mail and computer.   She indicated that she does not need to be reminded to care for personal grooming or to take medications.   She is able to take care of her finances.   She spends time with family and visits on holidays.   Claimant reported to being able to get along with others.   Claimant completed the application and report forms without assistance.

## Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to consider Claimant's nonsevere manipulative limitations, in violation of Social Security Ruling 96-8p; (2) the ALJ failed to consider "observations by our employees"; (3) the ALJ committed reversible error by failing to order a consultative examination; and (4) the ALJ failed to comply with Social Security Ruling 96-7p by discrediting her for failure to obtain treatment (ECF No. 10).

The Commissioner argues that (1) substantial evidence supports the ALJ's determination that Claimant was not disabled; (2) substantial evidence supports the ALJ's residual functional capacity determination; (3) substantial evidence supports the ALJ's credibility assessment; and (4) the ALJ was not required to order a second consultative examination regarding Claimant's alleged impairments or to develop the record (ECF No. 15).

Claimant first argues that the ALJ erred in failing to include accommodations in her RFC for left hand manipulative limitations. Claimant testified to being able to lift twenty pounds with both hands (Tr. at 48).   In his decision, the ALJ acknowledged that Claimant experiences a tremor of the right hand that started in late 2009 or early 2010.   The ALJ explained that Claimant "has difficulty with her grip and uses both hands when picking up a cup.   She uses cups with lids to prevent spills.   She has difficulty dressing because of buttons, shoelaces and hooks, and her husband assists her with dressing.   She has help bathing and shaving her legs" (Tr. at 25).

The ALJ held that after careful consideration of the evidence, he found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment (Tr. at 26).   The ALJ discussed the history and physical examination by Arturo Sabio, M.D., with Tri-State Occupational Medicine, Inc. (Tr. at 280-284).   In December 2006, Dr. Sabio found that Claimant's cervical spine motion was normal.   There was no tenderness, inflammation, swelling or effusion of the shoulders, elbows, wrists and hands.   Range of motion of the shoulders was restricted due to pain and stiffness, but fine manipulation movements were normal. Dr. Sabio stated that Claimant could "write, pick up coins and button her

8

clothes without any assistance" (Tr. at 283).   The ALJ pointed out that Claimant's right hand grip was measured at 24 KGF with zero on the left hand.

In his decision, the ALJ stated that in December 2009, Claimant reported numbness and night pain in both hands and was diagnosed with possible carpal tunnel syndrome[3] and given wrist splints to use bilaterally at night.   Suresh Balasubramony, MD, noted that in February 2010, Claimant reported numbness and weakness of the upper extremities with some relief from wrist braces.   Dr. Balasubramony's examination indicated slight muscle weakness of 4/5 in the upper extremities.   Claimant was again examined in March 2010.   The examination revealed tenderness of the cervical spine with reported pain of nine on a scale of one to ten.   The ALJ pointed out that there was no reference to a hand tremor in the evidence and there were no further medical records regarding the cervical spine problems (Tr. at 26).

The ALJ found that Claimant's impairments fail to satisfy Listing 1.02, Major dysfunction of a joint(s). The ALJ further found that the record contains no evidence of gross anatomical deformity and chronic joint pain and stiffness with signs of limitations of motion or other abnormal motion of the affected joint(s).   The ALJ found that the record contains no finding on appropriate medically acceptable imaging of joint space narrowing, bone destruction or ankyloses of the affected joint(s) with involvement of one major peripheral weight bearing joint, resulting in

---

[3] Claimant was assessed with possible carpal tunnel syndrome on December 8, 2009, by Janie Knotts, PA (Tr. at 332).   Suresh Balasubramony, MD, saw Claimant on February 8, 2010, and did not assess her with possible carpal tunnel syndrome even though Claimant reported to pain in both her upper extremities which received relief from wearing wrist braces (Tr. at 341-342).   Dr. Balasubramony saw Claimant again on February 22, 2010 (Tr. at 345-348).   Again, Claimant was not assessed with possible carpal tunnel syndrome (Tr. at 346).   Dr. Balasubramony saw Claimant on March 31, 2010 (Tr. at 347-348).   Dr. Balasubramony did not assess Claimant with possible carpal tunnel syndrome (Tr. at 348).

inability to ambulate effectively, as defined in 1.00B2b.   Additionally, the ALJ found that the record contains no evidence of involvement of one major peripheral joint in each upper extremity resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

The ALJ held that Listing 1.04 is not met because the record does not demonstrate compromise of a nerve root or the spinal cord.   The record does not contain additional findings of evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, positive straight-leg raising or spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication (Tr. at 24).

The court proposes that the presiding District Judge find that the ALJ's determination that a left handed manipulative limitation was not necessary is supported by substantial evidence. The ALJ addressed Claimant's mild tremor on her upper extremity, although the ALJ found the impairment failed to meet one of the listed impairments in Appendix 1.   The ALJ reported that even with the mild tremor on the right upper extremity, Claimant's right hand grip was normal (Tr. at 24).   The ALJ considered Claimant's assertion of joint damage, pain and limitation and only found a mild tremor in her right hand.

In a Physical Residual Functional Capacity Assessment (Tr. at 315-322) performed on February 24, 2010, by Medical Consultant Rafael Gomez, MD, reported Claimant to have zero manipulative limitations (Tr. at 318).   Dr. Gomez reported Claimant as not fully credible.   He stated that Claimant's allegations were out of proportion to the medical findings (Tr. at 320).   Dr. Gomez pointed out that Claimant's upper extremity strength was four out of five (Tr. at 322).   Dr. Gomez recommended Claimant perform light work.

10

Claimant asserts that "the ALJ wholly failed to consider the increase in symptomology from the date of the claimant's consultative examination, in December 2006, and the date of the hearing, in January 2010" (ECF No. 10).   Although Claimant refers to regulatory language and occupational titles to be considered, Claimant's assertion that the ALJ failed to consider symptoms of left hand manipulative limitations is not supported by substantial evidence.   The ALJ's determination not to include a limitation a claimant asserts is not a failure of the ALJ to consider all the evidence on the record.

SSR 96-8p states that

> [i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.   For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.
> SSR 96-8p, 1996 WL 362207, *34477 (1996).

The Court proposes that the presiding District Judge find that the ALJ adequately considered Claimant's nonsevere impairments in assessing Claimant's residual functional capacity.   In his decision, the ALJ found that Claimant's 2009 radiology report revealed calcaneal spurs of the right and left feet, but was otherwise negative. Although subsequent records give a diagnosis of calcaneal spur, they do not evidence any further complaints or treatment for foot pain. The ALJ granted Claimant the benefit of the doubt and included limitations in Claimant's residual functional capacity of her ability to stand and walk (Tr. at 27).   Regarding Claimant's chronic joint pain and stiffness with signs of limitations of motion, ankylosis of the affected joint(s) with

11

involvement of one peripheral weight bearing joint, resulting in inability to ambulate effectively, or involvement of one major peripheral joint in each upper extremity resulting in inability to perform fine and gross movements effectively, the evidence did not indicate that these conditions resulted in any kind of additional limitation beyond those found by the ALJ.

Claimant argues that the ALJ failed to consider "observations by our employees." Claimant asserts that in October 2006, a state-agency employee conducted a teleclaim interview with the claimant. The state-agency employee noted that the claimant had difficulty answering questions.  Claimant asserts that "It was also noted that Claimant moaned at times due to apparent pain and that she changed hands often with the phone because her hands were numb" (ECF No. 10, Tr. at 165-167[4]).

20 C.F.R. § 404.1529(c)(3) states that "[w]e will consider all of the evidence presented, including information about your work record, your statements about your symptoms, evidence submitted by your treating, examining or consulting physician or psychologist, and observations by our employees and other persons."   Claimant asserts that the ALJ failed to consider an increase in her symptomology from her onset date up until the date of the hearing.   Claimant further asserts that "the ALJ wholly failed to consider the observations and documentations of the agency's own

---

[4] Claimant's Brief references transcript page 176 when asserting the state-agency employee's notes from a teleclaim interview taken of Claimant in October 2006 (ECF No. 10).   However, transcript page 176 is part of a Personal Pain Questionnaire form completed by Claimant on October 27, 2006.   A teleclaim disability report was completed by A. Mccomas begins on transcript page 165. The disability report states the protective filing date as October 12, 2006 (Tr. at 165).   The disability report states the date Claimant was last insured as December 31, 2010. The form is dated for October 23, 2006 (Tr. at 167).   A report completed in October 2006, cannot predict the date Claimant was last insured in 2010.   Therefore, the accuracy of the date provided for completion is questionable. Nonetheless, the state-agency employee's observations via teleclaim clearly reflect that Claimant's hearing, reading, breathing, understanding, coherency, concentrating and talking reflected no difficulty in performing by Claimant (Tr. at 166).   The state-agency employee observed Claimant's "answering" to reflect that she "moaned at times with apparent  pain" and "said she had to change hands often during the [tele]claim with the phone due to hands going numb."

employee which provide further credulity of these subjective complaints" (ECF No. 10).   The state-agency employee's notation of Claimant's need to switch hands during the teleclaim due to numbness was subjectively based on the self reporting by Claimant.   Further, the ALJ held that he could not find Claimant's allegations to be credible because of the significant inconsistencies in the record and overall lack of objective evidence.   The ALJ found that "[t]he totality of the records reveal the claimant is able to engage in basic work activities despite the limitations from her impairments" (Tr. at 28).

Claimant asserts that the ALJ committed reversible error by failing to order a consultative examination.   SSR 96-7p states that the "adjudicator may need to re-contact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner."   Claimant further asserts that the ALJ failed to comply with SSR 96-7p in discrediting the claimant for her failure to obtain treatment without first considering her explanations for the lack of treatment (ECF No. 10).   SSR 96-7p provides that an ALJ "must not draw any inference about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment" without first considering the evidence of record which may explain "infrequent or irregular medical visits or failure to seek medical treatment."

In the present case, Claimant's lack of medical treatment was only one factor the ALJ considered in assessing her credibility.   The Fourth Circuit instructs that an ALJ's credibility findings are "virtually unreviewable by this court on appeal."   *Darvishian v. Green*, 404 F. App'x 822, 831 (4th Cir. 2010)(citing *Bieber v. Dept. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997)(unpublished)(an

13

"ALJ's credibility findings… are entitled to substantial deference"). When evaluating a claimant's testimony, the ALJ first considers whether the claimant has one or more medically determinable impairments that could reasonably be expected to produce the symptoms alleged. *See* 20 C.F.R. § 404.1529(b). If such an impairment(s) exists, the ALJ then evaluates the intensity, persistence and limiting effects of the alleged symptoms arising from these impairments to determine the extent to which the alleged symptoms limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c).

Claimant asserts the ALJ failed to consider Claimant's nonsevere manipulative limitations, in violation of Social Security Ruling 96-8p; Claimant asserts the ALJ failed to develop the record prior to making a determination that she is not disabled. Claimant argues that the ALJ failed to order a consultative examination due to insufficient evidence to decide the claim. Defendant asserts that when the record is sufficient for an ALJ to analyze a claimant's functional abilities, the ALJ has no further obligation to develop the record. An ALJ is required to order additional medical tests and examinations only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1517. A consultative examination may be purchased when the evidence is not sufficient to support a decision on a claim. However, an ALJ is not required to obtain a consultative examination. *See* 20 C.F.R. § 404.1519a(2)(b).

In *Cook v. Heckler*, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by

14

the claimant when that evidence is inadequate." *Id.*   The court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence.   *Id.*

Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel.   *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994).   Claimant bears the burden of establishing a *prima facie* entitlement to benefits.   *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")   Similarly, he or she "bears the risk of non-persuasion."   *Seacrist v. Weinberger*, 538 F.2d 1054, 1056 (4th Cir. 1976).

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that he or she is disabled.   20 C.F.R. §§ 404.1512(a) and 416.912(a) (2013).   Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that he or she has an impairment.   *Id.* §§ 404.1512(c) and 416.912(c).

Claimant asserts that state-agency employee, A. Mccomas', remarks reported after conducting the teleclaim in October 2006, report that Claimant "hasn't been to the doctor for a long time because she can't afford it" (Tr. at 167).   A. Mccomas remarked that Claimant did not have insurance.   (*Id.*)   Claimant asserts "In the decision, the ALJ stated that "two factors [weigh] against considering [the claimant's] allegations to be strong evidence in favor of finding the claimant disabled."   Claimant then skips the following sentence in the ALJ's decision which states "First, allegedly limited daily activities cannot be objectively verified with any reasonable

15

degree of certainty."   Claimant quoted the ALJ's second factor stating "even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical conditions, as opposed to other reasons, in view of the relatively weak medical evidence…" The ellipsis omits the end of the sentence which would have included "and other factors discussed in the decision."   The ALJ's following sentence, which Claimant did not quote, described a broader view of how the two factors weighed against considering Claimant's allegations to be strong evidence in favor of finding Claimant to be disabled. The ALJ found that "Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision."   (*Id.*)

Claimant's Brief continues to selectively quote sentences from the ALJ's discussion on effectiveness of treatment and activities of daily living to assert her argument that the ALJ incorrectly discredited her for failure to obtain treatment without first considering her explanations for the lack of treatment (ECF No. 10).

The ALJ held that he could not "find the claimant's allegations that she is incapable of all work activity to be credible because of the significant inconsistencies in the record and overall lack of objective evidence.   The totality of the record reveals the claimant is able to engage in basic work activities despite the limitations from her impairments" (Tr. at 28).   A complete reading of the ALJ's determination illustrates that the ALJ considered more than simply Claimant's lack of treatment to conclude that Claimant was not credible.   The ALJ considered more than Claimant's assertion that she could not afford treatment due to lack of insurance.

A complete reading of the ALJ's discussion on Claimant's credibility and extent of activities of daily living is as follows:

16

As for the claimant's activities of daily living, she testified that she does not participate in social activities but goes grocery shopping on short trips, prepares simple meals, and lies down throughout the day for short periods.  She spends her days watching television and listening to the radio, but does not use the computer as much as in the past because she has difficulty typing and controlling the mouse.  In October 2007, Ms. Lamp reported that her husband does the housework.  She helps care for a pet and goes outside two or three times a day to take the dog out. She washes dishes and does laundry.  She keeps medical appointments and is able to drive, walk and ride with others in an automobile.  She shops in stores, and by phone, mail and computer.  She indicated that she does not need to be reminded to care for personal grooming or to take medications.  She is able to take care of her finances.  She spends time with family and visits on holidays.  In a February 2010 function report, she indicated that she no longer cares for the pet, drives or takes care of finances.  She has no problems getting along with others.  She can follow written and spoken instructions but does not finish what she starts.  She does not handle stress well but can handle changes in routine.  She does not like to be alone or with large groups of people.  It is noted that the claimant completed the forms with no assistance indicated.

Although the claimant has described daily activities, which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled.  First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.  Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

Despite the complaints of allegedly disabling symptoms, there have been significant periods of time since the alleged onset date during which the claimant has not taken any medications for those symptoms.  As to the side effects of medication, there are none established which would interfere with the jobs identified below by the vocational expert.

As to the effectiveness of treatment, although the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. Furthermore, the record reflects significant gaps in the claimant's history of treatment.  There are no records for the period from December 2006 through December 7, 2009, and no treatment records after March 2010.

As for the opinion evidence, the undersigned gives great weight to the opinions of the State Agency consultant physicians and psychologists, as these expert opinions are balanced, objective and consistent with the evidence of record

as a whole through the dates of their reviews.   Although these experts did not have an opportunity to examine or treat the claimant, the reports clearly reflect a thorough review of the record and are supportable.   In short, these experts' familiarity with Social Security Administration disability evaluation program and the evidence of record warrants the greatest weight.   That said, the above residual functional capacity reflects additional limitations from hearing level evidence not considered in these assessments.

Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor.   Yet a review of the record in this case reveals no restrictions recommended by the treating doctor.

Finally, 20 C.F.R. 404.1529 requires the undersigned to consider the claimant's work history in assessing her credibility.   There is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments.   The claimant testified she "quit" her job as a retail manager and reported that she stopped working because of "problems on the job as well as my condition."

In sum, the above residual functional capacity assessment is supported by the claimant's functional abilities as determined in this decision and has been reduced to accommodate limitations resulting from her severe impairments.   However, the undersigned cannot find the claimant's allegations that she is incapable of all work activity to be credible because of the significant inconsistencies in the record and overall lack of objective evidence.   The totality of the records [reveal] the claimant is able to engage in basic work activities despite the limitations from her impairments. (Tr. at 27-28).

The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision."   *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion.

This duty of explanation is always an important aspect of the administrative charge . . . ."
*Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Substantial evidence supports the ALJ's finding that Claimant's alleged severity of symptoms was not credible. The ALJ held Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment.   The ALJ concluded that the objecting findings do not support the limitations alleged by Claimant and reveal she is only partially credible regarding the severity of her complaints.

As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations.  *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

## Vocational Expert's Testimony

At the administrative hearing, the ALJ asked the Vocational Expert (hereinafter, VE) if jobs existed in significant numbers in the national economy that someone with Claimant's age, education, past relevant work and previously stated exertional limitations, could perform (Tr. at 29).  The VE testified that such a person could perform jobs including such as counter clerk, security guard and ticket taker (Tr. at 58).  Based on the VE's testimony, the ALJ ruled that Claimant could perform work in the national economy, and therefore, she was not disabled under

the Act (Tr. at 29-30).   Pursuant to SSR 00-4p[5], the VE's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

<u>**Conclusion**</u>

The ALJ's decision was issued on July 22, 2011.   The ALJ found that Claimant's impairments do not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.   Substantial evidence supports the determination of the ALJ.   The ALJ's decision reflects an adequate consideration of her impairments.   The ALJ appropriately weighed the evidence of record in its entirety to determine that alleged manipulative limitations do not preclude her ability to perform any substantial gainful activity.   The ALJ fully complied with his duty in keeping with 20 C.F.R. § 404.1523 (2013).   Accordingly, the ALJ denied Claimant's application for DIB under the Social Security Act.

The court proposes that the presiding District Judge find that substantial evidence supports the ALJ's credibility assessment and determination that Claimant is not incapable of all work activity.   It is Claimant's obligation to show that she is disabled.   There was not a lack of evidence necessitating the ALJ to obtain another consultative examination.   Claimant incorrectly argues that the consultative examination on the record from 2006, is stale.   The consultative examination was performed during the relevant period of Claimant's alleged disability.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

---

[5] Social Security Ruling 00-4p:  Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.   Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).   Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter:   August 19, 2014

Dwane L. Tinsley
United States Magistrate Judge

21